Good morning, Your Honor. Charles Chafik on behalf of the appellant, Tiffany Carter. Robert Trisno on behalf of the appellant, Audrey Carter. Each side has 15 minutes. We do not look at our watches in this division, but we do appreciate it if you get to your strongest points first. I can assure you we've read the briefs, all three of us, so we're ready to discuss the case. And so anytime you're ready, Mr. Chafik. Sir, how do you pronounce your name? Last name is pronounced Chaifak. May it please the court, I would like to reserve five minutes for rebuttal if I could. Certainly. Thank you. The overarching issue in this case is whether the appellee, Audrey Carter, as trustee of the Marital Trust and as its income beneficiary, breached her fiduciary duties to the appellant, Tiffany Carter, who was the remainder beneficiary of the Marital Trust principle, by putting her own interests ahead of Tiffany's interests. The facts of this case are pretty straightforward. Luther Carter created the Marital Trust. When he did that, he named his second wife, Audrey Carter, as the income beneficiary of the trust. He named his only child by his first wife, Tiffany Carter, as the remainder beneficiary. He also identified and named Audrey Carter as the trustee of the Marital Trust. Ms. Carter is not the appellant's mother. In 2003, Luther Carter passed away, and the Marital Trust was funded with approximately $2 million. What's important for purposes of this appeal is that the Marital Trust, in Article 4, provides for the distributions of the Marital Trust. And what it says in Section 4.1 is that the trustee shall pay all of the income to Audrey Carter. That's 4.1. 4.2 says that Ms. Carter cannot be paid anything from the principal of the trust, and 4.4 gives all of the principal to Tiffany upon Ms. Carter's demise. How much money was put into the separate and family trusts? When Mr. Carter died, he had approximately $4 million in his estate. $2 million went into the Marital Trust, $1 million went into the GST Trust, and another $1 million, I think, went into the Family Trust. And those two other trusts were primarily for Tiffany to control, is that right, or to her trustee? She used to get the benefit of those two trusts. Those were primarily for her benefit. That's correct. Why is it improper for Audrey to invest in municipal bonds which give her income during her lifetime? It is not improper per se to do that unless she is violating her fiduciary duty to Tiffany by invading the principal with that investment strategy. And that's precisely what happened here. Why do you say that? Why do you say she's invading the principal with that investment strategy? Explain that. I will. There was $2 million in the Marital Trust when it started. Ms. Carter, from the very beginning, decided to invest the Marital Trust all in tax-free municipal bonds. I am not an investment expert, but it's my understanding that you would be hard-pressed to find an investment vehicle that would pay you more tax-free income than a tax-free municipal bond. So what happened was ---- Just a second. Let me ask you. Section 11.5 of the trust provision says, the operative language, that the trustee has the power to invest in bonds, common or preferred stocks, municipal funds, real estate or other property of any kind regardless of diversification and regardless of whether the property would be considered a proper trust investment. What does the language regardless of diversification mean to you? That means that Ms. Carter, in her capacity of trustee, does not have to diversify her investments. Right. So in this case, she decided she was going to ---- she liked bonds and she seems to be somewhat of a sophisticated investor from what I read. She talks with her sons and with friends and she reads the investment papers and in her mind this is a good investment. What's wrong with that based on the trust language? That's a good question. If you look at the beginning of Article 11, the preamble of it governs all the subsections of 11. And what it says is, in addition to all powers granted by law, the trustee shall have the following powers to be exercised in a fiduciary capacity. And that's important. She had a fiduciary obligation to all the beneficiaries of the marital trust, not just herself, which meant that she had to invest in such a way that she wouldn't violate her fiduciary duties to Tiffany. Well, let me ask another question, a follow-up question. Supposedly this trust is to pay her income for the course of her life, right? Correct. So this has been going on now. Her investment strategy that the plaintiff takes exception to has been going on since 2003. There is testimony in her deposition that she is certainly going to consider and continue reevaluating her investment strategy. So over the course of her life, when she is the trustee of this trust, if she changes to something else, would that satisfy the concerns that the plaintiff has if she diversifies in the future? Because I think she, according to the deposition testimony, she suggested that she's willing to look at that. Would that satisfy the plaintiff's concern? Let me answer that in two ways. To this point, the damage has been done. One of our prayers for relief is to have her removed as the trustee. We have made a number of over- You've got to answer my question. I will. It would satisfy it going forward. But I will tell you that when she invested in 2003 in municipal bonds, the stock market was clipping along and everyone was making a lot of money. In 2007, when the financial landscape of our world changed and investments became much more challenging, she stayed in municipal bonds. Suppose you had gone to Sherrison-Lehman in 2006 when things were really clipping along in a nice clip. How would it have worked out for your client then? Well, it may have not worked out very well. I suppose so since they went bankrupt, if I recall. I read that somewhere. So that would have hurt Tiffany, correct? It could have hurt Tiffany very easily. Suppose she bought Italian bonds. They're going at 6% right now, I'm told. I don't know anything about this stuff. I heard it on the radio. But suppose she went out today and invested. Like at Tiffany's request, 4.4%, that's kind of low. Please invest in something that will get more return. How about Italian bonds? Would that be a good idea? Italian bonds would not be a good idea. It would not be a good idea. Okay. No, that's correct. But the difference between what you're suggesting and what happened here is, is that Ms. Carr knew that by investing in tax-free municipal bonds, that the principal would always remain stagnant. In fact, it would lose value. She knew it would lose value because it – I agree that that is certainly your point. That's a fact, that the principal would remain stagnant. But is there anything in the trust language of this testator that says that the investment strategy of the trustee must include a strategy that not only produces good income but grows the principal? I mean, Tiffany makes an argument that when she gets the – by the time the principal passes to her, it will be so reduced, it will not approach the $2 million that it was when it was funded. Is there anything in the document that says that $2 million is like the threshold and the investment strategy must always maintain that? No, but the trust instrument does say that Ms. Carter has fiduciary obligations to the remainder beneficiary. And when you engage in an investment strategy that you know will damage, you know will damage a beneficial interest in the trust, you can't do that. And I would point out, I would point out that in her answer to the complaint – well, let me back up. I want to be clear about something because this is, I think, an important but subtle point. When evaluating whether someone has violated their fiduciary duties, under the prudent investor rule, you don't necessarily look at the results because the results can be nebulous like Italian bonds or that. You look at the conduct, the conduct of the fiduciary, of the trustee. And the conduct here that gives rise to liability is not necessarily that the trust has been devalued hundreds of – the principal has been devalued hundreds of thousands of dollars. That's not the reason why she's liable for a breach of fiduciary duty. The conduct here that gives rise to liability is her knowing that her investment strategy was going to damage Tiffany. And she did. Well, again, going back, well, first you admit in your reply brief that this is – the language in this trust instrument is unambiguous, right? That's correct. So it's absolutely unambiguous. That being so, then the judge had a hearing and reviewed the documents and determined that the purpose of this trust, the marital trust, called the marital trust, which would necessarily involve Audrey, was to make sure that Audrey had a source of income for the rest of her life, the stepmother. And the stepdaughter, not in the case of first impression, quite the opposite, is unhappy with that. In an unambiguous trust, how is it then that we should read it any other way than the marital trust was designed to supply income to Audrey? The reason – it's not ambiguous because it doesn't have anything in here that empowers Ms. Carter in her capacity as a trustee to favor her interests over Tiffany's interests. And that's precisely what she's done here. She doesn't have that power. They did write out the diversification clause in the prudent investor rule, but they didn't write out her duty of impartiality, her duty of loyalty. They didn't write out any of that. So you can reconcile the non-diversification clause with her fiduciary duties in this way. Ms. Carter is free to invest in whatever she wants. If she wants to sink all her eggs in one basket, she can do that. But she can't do it if to do it means she's going to violate her fiduciary duty to any other beneficiary. And when you know that you are going to invest in a way that's going to invade principle and diminish the value of that principle from that marital trust, then you're violating your fiduciary duty, and that's exactly the conduct that you need to focus on that this Court recently ruled on in the Fayville case where it said you need to focus on conduct, not results. Results are important because they determine a measure of damages, and you look at that, but it's the conduct. And here, and I will point out in her answer, Ms. Carter invested with a very myopic view of what her duties were. In paragraph 18 of the answer, she says, second sentence, this is at A38 of the record, the interest of a vested current beneficiary of a marital trust as to income always takes precedence over a remainder interest. That's an incredible statement of law when you know that you have a fiduciary duty to a remainder beneficiary, and that fiduciary duty includes the duty to be impartial. Well, let's look at Fayville. I have it in my hand. And it says here, again, the trustee won in that case, and in doing so this Court said, affirmed the trial court's finding. As the trial court properly noted, however, nothing in the trust document itself requires the trustee to produce a certain level of income for the beneficiary or to maximize the investment potential of the trust assets. Moreover, the prudent investor rule is intended to be a, quote, a test of conduct and not a resulting performance site. Plaintiffs' claims focus solely on the resulting performance of Martin's investments as trustee, not his actual conduct as trustee. Accordingly, we find the trial court did not err in finding plaintiffs failed to establish a cause of action under the prudent investor rule, and then they cite the standard of review for this. We cannot say, and this is a quote from a different case, that the co-trustees are acting in a wholly unreasonable and arbitrary manner, which is what you would have to show. I'd suggest to you that is a standard of review in an unambiguous trust, that the trustee was acting in a wholly unreasonable and arbitrary manner, because they have sought to protect the principle of the trust, which is the opposite of this case, et cetera. Is it wholly arbitrary? No. Well, I would disagree with, well, I would distinguish that case by this point. They were arguing that the rate of return was only, I think, 2.53 percent. Right. And they were saying, that's not enough. We want more. You've got to grow that principle. They probably should have called Audrey and gotten some advice to get 4.4. That might have helped. It may have, unless a court determined that in doing so you were damaging, knowingly injuring or damaging. What's your strongest case? It's clear it's not Fable because Fable was against it. Yes. So what's your best case? Well, I say that a person, a beneficiary of the principle can attack, bring in lawyers who spend lots of money to attack an unambiguous trust instrument. What's your best case for that? Yeah, here. Based on this language of this type of trust. That was my next question. Tell me a case that supports what you're asking us to do. We have to write something that makes sense if we are to rule your way. What is the best authority that you can give us to do what you're asking us to do? The closest case on point to this entire factual scenario, good or bad, comes out of Washington, and that's the Cooper case. And Washington adopted very closely the prudent investor rule that Illinois has. I will tell you candidly that there are not any cases in Illinois that deal with this tension that exists between a nondiversification clause and the fiduciary duties that an income beneficiary has to a remainder beneficiary. And in that case in Washington, the Cooper case that we cite, the court said that by investing 87% in tax-free municipal bonds, you violated your fiduciary duties to the remainder men because you knew that that principle wasn't going to grow. You knew it wouldn't keep up with the rate of inflation. In fact, I think the court found that the inflation was at a 6% rate, the rate of return was only 2%, so there's a 4% decrease in the principle. And they said you can't do that. You were reading it. I read it not to attack our friends in Washington. I thought a lot of it was gibberish. The estate was worth a lot more from the time the estate came into being and the time of the complaint. And if that's what we're going to do, if that's the standard, we should adopt the 1996 Washington State Intermediate Court of Appeals case for the proposition that any time a beneficiary of essentially what is a remainder, I'd suggest, and using that word loosely, can bring into court the trustee in violation, I'd suggest, of unambiguous language. Well, that's great news for the lawyers and a terrible news for the people who set up trusts. That's more of a comment than a question. I understand your comment. And if that were this case, I probably would agree with you. But that's not this case. And I would suggest that this case is unusual. I don't think you're going to be necessarily changing the landscape of trust law. This case is unusual in this sense. The trustee willingly admits that she put her interests ahead of Tiffany's interests. And the trust is unambiguous in this sense. Well, as Justice Cunningham just pointed out, we are changing it. And your reliance is that we won't change it by saying that Audrey is on the hook for this because you can cite a 15-year-old Intermediate Court of Appeals case out of Washington State for the proposition of prudent investment rule, Trump's unambiguous trust language. Okay. Nobody else has ever held that before or since, I'd suggest. I read a lot of stupid appellate court opinions, I mean, somewhere from this court. It's just shocking what some people write. But that's it. That's your case. Okay. Well, don't worry about it. You asked my best case. I believe you cited, we cited, String cited a number of cases in there. Okay. But let me pose a rhetorical question. No one here disputes that Ms. Carter owes fiduciary duties to Tiffany as the trustee. We can all agree on that, I believe. Yes, she does not go to Vegas and bet on glass. It's unambiguous in paragraph 11.5 of the preamble. She owes fiduciary duties to everything she does as a trustee. If she does owe her a fiduciary duty, is there no greater fiduciary duty than to say, I will not knowingly invest in a strategy that will harm you? If a fiduciary duty means anything, it has to mean that. How can she say she's discharging a fiduciary duty when she is knowingly injuring and harming her remainder beneficiary? On the other hand, wasn't it the intent of the testator in this trust to provide income for her during her lifetime? It absolutely was. That was the stated intent. Right. And any remainder to the child upon her death, upon Audrey's death. So wasn't she complying with the intent of the testator? She was complying with the – no, she wasn't complying with the intent of the testator because the testator said, you have a fiduciary duty to my only daughter, okay, to make sure that she gets the principle of that trust and you don't pay yourself anything out of it and you abide by your duty of impartiality and loyalty and you cannot harm my daughter and her interest in that remainder principle by investing in such a way that you know will damage and diminish that principle, okay? And she can still draw plenty of income off that marital trust in other ways that aren't going to have any significant impact on her. We proposed a number of solutions during this where she might get $10,000 less a year as opposed to 80. Was she buying and trading municipals or was she in an established long-term mutual like 20 years out? That's a good question. The only thing I can tell you is that she's always been in tax-free municipal bonds since 2003. If she's changed certain tax-free municipal bonds within that time period, I don't know, but the effect has been the same. Under different economic conditions, it may very well have been that the principle was stable or might have even increased. Again, we don't know. But, again, I would suggest that you don't look at the results. You look at the conduct. And the conduct here is a willful decision to invest in a way she knows is going to harm the remainder beneficiary. Mr. Chaffik, your entire argument rests on the fact that the principle must be the same or increased from the amount that the testator left at the time of his death. It doesn't say that in any of the documents I read. It says that Tiffany gets the remainder. The remainder means what's left. So what's left could be $2 million. I know Tiffany argues that the principle is now $300,000 less than what it was in 2003. And that may very well be so. But we are bound by the language of that trust document. And that doesn't say that the trustee must invest in such a way as to preserve the principle at the time of the establishment of the trust. It doesn't say that. I agree with you. There's no guarantee that when she gets that principle, that it's going to have a value of $2 million in today's world. Okay? There's nothing in the trust that guarantees that or says it. But what the trust does say in unambiguous terms is that she's a fiduciary. Okay? And when you're a fiduciary, you can't knowingly engage in conduct or investment strategy that's going to harm your beneficiary. If you say that she can do that, then what does ‑‑ what fiduciary duty does Ms. Carter have with Tiffany? Audrey also testified in her deposition that she believed that the testator's interest in establishing this trust was to maximize her income potential. You can use those words. But his primary purpose was to establish a trust that would give her income for the rest of her life. And she takes that to mean that as much income as she's able to get from that trust, that's what he intended. I mean, I don't think that there was anything to refute that. But that would go along with your argument that her investment strategy is to the detriment of the remainder man. And that's probably true. So what happens in a situation, just bear with me for a moment, where there's a trust that's established. There is no specific instructions from the testator other than the trustee may invest in any manner which he or she sees fit. And there is a conflict between what the investment strategy established by the trustee will do to the remainder man versus to the beneficiary. Who prevails? Okay, first of all, there is nothing in this unambiguous trust document that says Ms. Carter's interest is the primary interest as the income beneficiary. It's called marital trust, is it not? It gives all the income to Audrey, does it not? Yeah, but just because it's called marital trust doesn't mean that the wife doesn't. Go ahead. It doesn't mean what? It doesn't mean that it's all for the wife. The principal, $2 million, is supposed to go to her only daughter. Right, in addition to the two Audrey gave. But unfortunately, in addition to the two that Tiffany already has in hand, and she can't get her hands on the other two until Audrey passes. Justice Quinn, are you suggesting that because he's provided for her in other ways, where she's getting some money. You're not allowed to ask me questions. Okay, well, I'm doing it rhetorically. I'm sorry. Just because she is providing for her in other ways doesn't mean that Ms. Carter then can say or a court should say, well, she's got $2 million over here, so forget how she manages these other $2 million. No, she'll get $2 million. Now, the claim is that the $2 million that she will get, assuming that the investments continue as they have so far, so whenever Audrey passes, God forbid, she'll get $2 million. Now, that will be $2 million in value of whatever year that is. It could be tomorrow. It could be 30 years from now. And 30 years from now, it's safe to say, that $2 million would be worth substantially less than they are in 2011 dollars, just as 2011 dollars are worth less than they were 15 years ago. That's how this works. So are we going to say something like that, that the principle is protected, that somehow we're going to impose a requirement that there be an inflation hedge imposed upon all trustees, income trustees, income beneficiaries to protect the remainder beneficiaries? That is not likely. I agree with you, Justice Quinn. But, again, the focus here is not on the end result. It's not whether she lost $300,000 or lost $500,000 in principle. It's the conduct. It's the conduct. And there's no dispute that the conduct here is knowing conduct that is designed to harm. Well, the conduct is the result. Why don't you take your five minutes anyway, because we've been asking a lot of questions. Mr. Trisna. May it please the Court. I come up here with no small measure of trepidation, if only because I am mindful of a comment that a dear mentor of mine, Judge George Layton, told me many, many years ago that when things appear to be going your way, remain silent. I share all of the Court's questions. I wouldn't assume that things are going anyway based on our questions. I learned that long ago. I'll ask you a question right out of the box. Why isn't the conduct of the trustee what we should focus on? I think your opponent makes a good point. The conduct is what gives rise to whatever is going to be left. And your client did agree that, yeah, she decided that she would invest in tax-free municipal bonds because it was completely beneficial to her, regardless of what happened to the principal. So why isn't the conduct? That's the crux of his argument. It's not the result. It's the conduct. And your client was truthful. I wanted to ask Mr. Chapin what happened if Audrey hadn't said what her conduct was. She was truthful and she said what it was. So why isn't that what we should be looking at? In fact, you should be looking at the conduct. The prudent investor rule suggests that that's exactly what you do. But you look at the conduct in the context of both the language of the trust, which is really the determinative benchmark of conduct, and also in the context of the entire investment scheme and strategy. And what's that here? Well, in the first instance, we start with the trust, which is the dispositive document. It really is the evidence, the clear and unequivocal and unambiguous evidence of the settler's intentions here. And that says, as your honors have pointed out, that Audrey is free to invest these trust assets in effectively any way she chooses without almost any limitation, including that it can be in investment vehicles that are not typically trust investment vehicles. If this language was not here, a corporate trustee most certainly would not be able to invest in some of the things perhaps that Audrey has invested in. But based upon this language, and especially for her personally here, she has an almost unlimited ability to invest trust proceeds or trust assets for the benefit of, at this point, herself, her lifetime income. Excuse me for interrupting. Does there ever come to a point where the market's going down the sewer, municipal bonds are lessening in value each day? Does there ever come a point where Audrey should wake up to the situation of an eroding principle and shift some of the investments with due regard to the remainder of interest in the trust? Absolutely. But in the first instance. Well, when does that come? Your Honor, I can't at this point envision a circumstance where you would have such a divergence in investments that Audrey's investment of the principle would somehow serve both the income interest and the principle interest. There's no divergence here. Right now, when the markets were in turmoil during the 2007-2008, Audrey's investment was basically risk averse. It maintained its face value. She, in the same period of time, generated $600,000 of tax-free interest income. As I believe maybe Justice — Well, fine for her. But what happened to the principle? The principle remained at $2 million. She started with $2 million? And she still has $2 million. So let's say it loses 25%. Isn't it time to say, well, what are we doing with $2 million here in municipals? Maybe we should shift over to some corporates or whatever. That might be possible, absolutely. When does the wake-up time come? I think under the terms of this trust, there is no bright-line test. There's no way that anyone could make — at this point in time, predicting the future is what all of us wish we could do. There's no way to predict at what point that would come. Because the investment decisions that she's charged with making, as any trustee in this position would be charged with making, require a certain level of common sense and also a certain level, if you will, of affected prescience. We're not talking about results, as the prudent investor rule clearly states. We're talking about reasonableness. We're talking about a common-sense approach here. If all of the equity markets were surging and the bond market was collapsing, it would be in Ms. Carter's own interest to find other investment vehicles, which might ensure that the growth would provide her with dividends that would make up for the lost interest income. But it's a very fluid situation. And the real key here is that, as this Court pointed out, what Tiffany Carter is asking this Court to do is effectively rewrite Illinois law and impose on the trustee here actually the duty to prefer the contingent remainder beneficiary's interest over that of the present lifetime vested income beneficiary. So let me ask you the same question I asked your opponent. What happens when the two interests are in conflict? At this point, I don't believe those two interests are in conflict. But hypothetically, what happens if they were? He says that they are. I mean, that's his argument, that the two interests are in conflict and that the chosen investment strategy of your client has caused a diminution of the principle, which is in conflict with his beneficiary's interest. So, again, what happens when the two interests are in conflict? When the two interests are in conflict in kind of an arbitrary or abstract fashion, I'm really not sure. The reason I don't think that in this kind of a trust the interest can ever be in conflict under these circumstances is that the lifetime marital beneficiary has the right to the income. The interests are only in conflict according to your opponent based on the investment strategy that Audrey has chosen. So my question goes to in such a situation, if you assume for the moment that your opponent is correct and that the investment strategy chosen by your client is detrimental to his client's interest, that means it's in conflict with your client's interest because I think we all agree that the investment strategy chosen was to maximize the income. So that would be to Audrey's benefit but against Tiffany's interest. So, again, what happens under these facts when the interests are in conflict? Your Honor, with all due respect, even under these facts they're not in conflict because one of the things that Audrey's investment strategy did was actually preserve the principle in ways that other investment vehicles would not have done. What's the principle today? The principle today is basically $2 million. And as this Court pointed out in questioning Mr. Chaffik, the trust document does not require and does not impose on the trustee any duty to ensure that the principle is preserved from inflation. That would have been a very simple task for the settlor to do in adding that type of provision to the trust language. He did not do so. The principle is approximately $2 million today as it was before. So what is your opponent complaining about? As he said, he's complaining about the fact that that's not $2,300,000 or $2,200,000, that somehow the inflation was not incorporated in the investment strategy and therefore my client has somehow mismanaged the trust. Clearly we disagree and we don't believe that that was either the settlor's intent nor is that the intent of Illinois trust law in situations such as this. Did the circuit court have Audrey's entire deposition or just only the parts that you quoted in your motion? I believe that Judge Novak had the entire transcript. Frankly, I don't recall it specifically, but I do believe that we gave her complete transcripts and just included the excerpts in the motion itself or with the motion itself. And you point out in your brief that Judge Novak did not make any findings as to whether Audrey acted in good faith. Is that correct? That's correct. I don't believe that based upon the way Judge Novak articulated her decision, that didn't become a factor for her. Although for purposes of liability of Audrey Carter, that language we would contend, even if her investment decisions were determined to have been less than optimal or even a breach of fiduciary duty, that provision of the trust that requires a showing of bad faith for her to be liable would have insulated her in that situation. And in the lower court, did Tiffany argue that there was bad faith on the part of Stepmom? Your Honor, I don't think it was overtly argued. I think there was always this kind of aura around the contentions about all of Audrey's conduct that it was somehow tainted and that there was some component of bad faith there. In fact, there wouldn't be any liability if there wasn't. So I think implicit, effectively, in Judge Novak's decision was a determination that there was not bad faith, that, in fact, Audrey acted in good faith, and, therefore, there was no liability for her conduct. Thank you. Thank you, Your Honor. Mr. Shainfeld, briefly. Thank you. Briefly, I want to read to you the first sentence of Section 5 of the Prudent Investment Rule, which was not written out of the Marital Trust and which is incorporated into Section 11. And it says, The trustee has a duty to pursue an investment strategy that considers both the reasonable protection of income and safety of capital consistent with the trustee's duty of impartiality and the purposes of the trust. I don't know how we can say that Ms. Carter discharged any fiduciary duty to Tiffany Carter when we all agree that she has fiduciary obligations when Ms. Carter deliberately invested in a strategy she knew that would not preserve the safety of the capital and she wasn't being impartial. She clearly put her own interests ahead of Audrey. And when we get into this issue about, well, how much did it diminish? How much would it have increased? The reason why that's a How did she fail to protect the safety of the capital? She failed to protect the safety of the capital by investing in a way where she knew the capital would be diminished by the rate of inflation. There's no allegations that any of these municipals failed. The municipals didn't fail, but they don't grow. Market value went down on them. But they don't She clipped the wrong fine. She got $80,000 a year. She can't control the market. I understand that. And that's precisely why, in the law, we don't look at performance or results. We look at conduct. And I bring you back to that again. If you say that she didn't violate her fiduciary duties by doing what she did, you are writing out the fiduciary duty obligations that are in that unambiguous marital trust. She has a fiduciary duty. And if it means anything, it means you can't deliberately harm a beneficiary. So you're saying she violated her duty to safely protect the capital by just sitting on her rump and holding her municipals. No, she And doing nothing further. She violated several duties, one of which was the duty of impartiality. And when she decided to put her own interests, which she readily admits to, ahead of Tiffany's, all those things fell into place. Okay? The trust, the principle is not going to keep up with the rate of inflation and the value is going to diminish. She had a duty to be impartial. She had a duty to be loyal. She had fidelity duties to Tiffany. Everyone agrees on that. If they mean anything, they mean you don't harm your beneficiary. One of the purposes of a trust instrument is to prevent litigation, isn't that? So that making it hard, making it difficult for overreaching a remainder of beneficiaries or outsiders or lawyers, whoever it may be, to come in and then somehow prevail, or even make a strong argument that they should prevail, where the money would have to be paid attorney's fees out of the corpus. Isn't that one of the major principles of trust documents? It's prevent litigation, is it not? Yeah, I agree with you, and I understand your policy argument, but let me suggest this. How it works then, though, is if we write it the way you're suggesting, which is that any time we look at the remainder beneficiaries and income beneficiaries, and if the income beneficiary doesn't guard against inflation, well, then let's go into court and hatch this out, shall we? That would destroy trust instruments, it would seem to me. Am I mistaken in that that would be the natural reaction, what is likely to occur, if we write it the way you ask us to write it? I respectfully disagree with you for a couple reasons. Number one, I think it will be the rare case where a trustee will boldly assert and acknowledge that she put her interests ahead of another beneficiary when she couldn't do that because she had fiduciary duties to both, and you have to treat them equally. This is an unusual case because she has, and they're testing the waters, I think, for this purpose. They're saying, I deliberately did this. Usually the case is the trustee says, you know, I made this investment, but it turns out in hindsight it really wasn't that good, but I thought it was a good investment, and it just didn't work out. That's the cases where you say. Testing the waters, so on whose behalf? I understand in criminal there's defense and there's prosecutors, and I understand in civil generally there's the plaintiff's bar and the defense bar. Is there in the trust bar, is there a division between, you know, income beneficiary people represent them and lawyers represent remainder beneficiary? I don't know if it's in the bar, but the case law that we cited and the persuasive authority and the treatises, they discuss this issue. They do. And you are going to have to say. But you're saying test the waters. Who? Who would want this to go forward? Who would want us, other than the two parties involved, who would want us to rule in a given way? I don't get it. Frankly, I don't know. When I say test the waters, I mean you are going to be to some degree in an uncharted territory because you're going to have to say. I recognize that Tiffany or Aubrey Carter has these fiduciary duties to Tiffany, but I also recognize that she has a duty. She doesn't have to diversify, but where does that bridge gap? Mr. Chaffetz, isn't the crux of your argument that essentially because Aubrey did not choose an investment vehicle that had a hedge against deflation, she was violating her fiduciary duties? I mean, that's what it comes down to. That's basically what you're saying. I disagree with that. What I'm saying is that when a trustee engages in an investment strategy, that that trustee knows will harm a beneficiary. The investment strategy in this case that harms the beneficiary, if you're talking the remainder beneficiary, is one in which there was no hedge against deflation, but rather a large income-producing element which gave the trustee a lot of income, but no regard to how much of the trust was preserved. As it stands, from what your opponent says, the trust remains at about the same level, which is less than it would have been had she planned for interest income to grow the principal. But that was not in the trust document. I mean, there's nowhere in the trust document that the testator said, in addition to providing income for yourself, you really ought to choose an investment vehicle that grows the principal. I agree with you. There's nothing in the trust instrument that says you have to invest this way. It's got a non-diversification. I mean, like Justice Quinn said, you're essentially asking us to say that in situations that are similar to this, where the trustee chooses a method or an investment vehicle which does not provide a hedge against inflation, he or she is violating their fiduciary duty. That's basically what you're asking us to say, and I don't think that's Illinois law. I don't think it's Illinois law either, but that's not what I'm asking you to say. If you focus on conduct, if that's what the Fayetteville case requires you to do and you focus on conduct, okay, what more egregious conduct can you find for a breach of a fiduciary duty when a trustee says and acknowledges, I have a fiduciary duty, says, I am going to invest in a strategy that is going to harm my beneficiary. It's the conduct. The fact that it's an end. She's a beneficiary as well, though. She is. She, Audrey, is an income beneficiary. It is only when she dies that the remainder beneficiary is going to get that money. The purpose of this, again, merits, well, go ahead. Wrap it up. Yeah, I was just going to suggest that she is the trustee. Regardless of whether she's an income beneficiary or just the trustee, she is the trustee, and so she has those fiduciary obligations. And I don't know what they mean. If they don't mean, you can't deliberately harm someone. And so the fact that it doesn't say in here, hey, you need to provide a hedge against insurance in the marital trust or you need to invest in this or you need to invest in that, you can't provide for all those contingencies, which is why you look at conduct, which is why you have these fiduciary duties, and you look at them in those contexts. And if the duty of impartiality, if the duty of loyalty means anything, it means you can't harm your beneficiaries. You can't. Yeah. This was decided on cross motions for summary judgment. Correct. Were there any affidavits or evidence from an expert on your behalf? There were. We had expert affidavits that were entered into the record and referred to in our brief about bank trustee department values or something? Yeah. It was a former, George Wendt, he's a former bank trustee who was doing this for 30 years and basically opined that this is an improper way to discharge your fiduciary duties to a remainder. I would make one correction for the record, Justice Quinn. Judge Novak did not have all the deposition transcripts in front of her. She had selected parts. And if I ask you then, that's my reason was, whose idea was that? Couldn't you have, you know, they did their job and they put their, Audrey said blah, blah, what we have in our briefs. Couldn't you have said, ah, but she also said these terrible things. And our girl Tiffany said all these wonderful things. Right? That's the nature of summary judgment. Yeah. I believe all the relevant salient facts were before her. Okay. That was my response. Thank you. Okay. Thank you very much. Same with the arguments in the briefs. Thank you. This case will be taken to advisement and this court will be adjourned. Thank you. Yes. Thank you very much.